IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| MAYFLOWER TRANSIT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.    ) | Case No. CV-01-TMP-493-NW |
| ) | |
| SPIRAL INDUSTRY, INC.; ) | |
| WELDON WATSON; and ) | |
| NANCY WATSON, ) | |
| ) | |
| Defendants. ) | |

**ENTERED**

DEC 3 2001

## MEMORANDUM OPINION

This action is before the court on a motion for summary judgment filed by plaintiff, Mayflower Transit, Inc. ("Mayflower"), on July 31, 2001. The parties have consented by stipulation to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). The motion has been supported by a brief and evidence. Defendants Weldon Watson and Nancy Watson[1] ("the Watsons") on August 1, 2001, filed a brief and evidence in opposition to the motion.

---

[1] The case initially included defendant Spiral Industry, Inc. ("Spiral"); however, the corporation has pending a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code and all claims against that defendant were dismissed by order dated August 22, 2001.

## **FACTS**

The plaintiff in the instant case, Mayflower, is a carrier of household goods and personal property based in Fenton, Missouri. The defendants, the Watsons, are residents of Tuscumbia, Alabama. The Watsons hired Mayflower to move their furniture and belongings from their home (and from a storage facility) in Lititz, Pennsylvania, to Tuscumbia. The Watsons moved to Alabama pursuant to Mr. Watson's acceptance of a job with Spiral Industry in Russellville, Alabama. Spiral and Mayflower entered into an agreement by which Spiral agreed to pay the Watsons' moving expenses. In addition, the Watson's entered into an agreement with Mayflower by which they agreed that they would also be liable for payment of the tariff charged by Mayflower.

On or about October 4, 1999, Mayflower picked up the items to be moved. The goods were delivered to the Watsons in Alabama on or about October 7, 1999. Both defendants signed the Bill of Lading: Nancy Watson as the "shipper" on October 4, 1999, and Weldon Watson as the consignor upon receipt of the goods on October 7, 1999. In addition, both defendants signed the "Household Good Descriptive Inventory" acknowledging pickup and delivery of the goods. Both signed as "owner, consignor, authorized rep[resentative] or agent."

The Bill of Lading states the following in a space above Nancy Watson's signature:

> If credit is extended by the carrier by agreeing to bill an employer or other party, and in the event that any or all of the charges are not paid, the owner of the goods and/or beneficiary of the services acknowledges he remains primarily liable for payment.

In addition, the Bill of Lading sets forth the contract terms on the reverse side, stating, at Section 3(a):

> The shipper, (individual or commercial) and consignor upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs, including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment. The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

The tariff charged by Mayflower was $25,061.01. The agreement with Spiral required Spiral to pay the tariff to Mayflower within 15 days after receipt of the goods by the Weldons. Spiral failed to pay, and has since filed a petition for Chapter 11 bankruptcy.

The Watsons also failed to pay, and assert that Spiral should be equally liable for the amount due to Mayflower.[2]

Mayflower is engaged in interstate transport under the authority of the Interstate Commerce Commission ("ICC") pursuant to the Interstate Commerce Act, 49 U.S.C. § 13101. Plaintiff has brought this action seeking payment of the moving charges of $25,061.01, along with prejudgment interest, postjudgment interest, and court costs. Defendants assert simply that Spiral should be "equally responsible" for payment as "guarantor."

## DISCUSSION

### A. The Freight Bill

Plaintiff Mayflower is an interstate motor carrier of household goods and personal property, and it shipped the goods at issue pursuant to a Uniform Household Goods Bill of Lading. Plaintiff's Ex. 1. The freight bill at issue was set pursuant to the ICC's published tariffs. Plaintiff's Ex. 2. The charges for the move are $25,061.01.

---

[2] There is no dispute as to whether the amount charged is correct an in accordance with the Motor Carrier Act, 49 U.S.C. § 317 and applicable ICC tariff provisions. The only dispute concerns whether the Watsons are liable for the payment.

4

Both Mr. and Mrs. Watson signed the bill of lading and inventory as shipper and/or consignor. By so doing, both agreed to be liable for the tariffs due, even though Mr. Watson's employer had also agreed to pay for the move.

This precise situation has been addressed in other district courts. In United Van Lines, Inc., v. Henry, 40 F. Supp. 2d 1102, 1104, (E.D. Mo. 1998), the court noted that "[t]he situation is a fairly common one in which an employer agrees to pay the moving costs of an employee." Id., quoting Banton v. Schroeder Moving Sys., Inc., 827 F. Supp. 1388, 1390 (E.D. Wis. 1992). Here, as in Henry and Banton, the employer agreed to pay moving expenses, but went bankrupt and failed to pay. In both Henry and Banton, the court found that the individuals who failed to pay were listed on the Bill of Lading as shippers and consignees, and that the terms of the contract imposed liability for payment on them, even though there had been agreements in which the employer had agreed to pay for the move. See also United Van Lines v. Homburger, 932 F. Supp. 139, 142 (W.D.N.C. 1996); United Van Lines v. Zak, 861 F. Supp. 61, 63 (S.D. Ill. 1994).

The court sees no distinction between any of those cases and the instant case. The defendants agreed to the terms of the Bill of Lading and agreed to be liable for payment. As the court noted

5

in Zak, "[t]he fact that David Zak's employer may have agreed to pay for the shipping has no affect [sic] on the Zak's liability to United." Id. Accordingly, the plaintiff's motion for summary judgment on the shipping tariff of $25,061.01 is due to be granted.

### B. Prejudgment Interest

The plaintiff seeks the contract price of $25,061.01, and in addition claims it is entitled to receive prejudgment interest. Plaintiff asserts that an award of prejudgment interest, accruing from the date the money became due, is "a mandatory element of damages." Plaintiff's motion at p. 12, quoting Louisiana Railway Co. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir. 1996). Plaintiff further asserts that the interest rate is governed by the 90-day Treasury Bill rate that was in effect on the date the payment became due, which plaintiff asserts was 4.88 percent per annum on the date the defendants' goods were delivered. Accordingly, plaintiff asserts that prejudgment interest has accrued at a rate of $3.35 per day. Defendants do not dispute the applicability of prejudgment interest, or the calculation of the rate.

In <u>Louisiana Railway</u>, the Fifth Circuit Court of Appeals[3] determined that prejudgment interest is mandatory. <u>Id</u>. However, that case involved interpretation of the Interstate Commerce Act's provisions and regulations governing rail carriers, not motor carriers. Another case frequently cited as precedent for the imposition of prejudgment interest in similar situations is <u>Southern Pacific Transportation Co. v. San Antonio, Texas City Public Service Board</u>, 748 F.2d 266 (5th Cir. 1984). That case also grants prejudgment interest to a rail carrier, and relies upon regulations governing rail carriers in support of its imposition of interest. <u>Id</u>. at 275, citing 49 U.S.C. § 10707(d)(2). <u>See also</u> <u>Delta Traffic Serv. Inc. v. Appco Paper & Plastics Corp.</u>, 931 F.2d 5, 7 (2d Cir. 1991)(holding that allowing recovery of the freight charges without prejudgment interest would diminish the tariff by the amount of the time-value of the money owed).

Even so, another district court in this circuit applied the holding in <u>Louisiana Railway</u> to a claim brought by a motor carrier, determining that an award of prejudgment interest for unpaid freight charges is mandatory. <u>See</u> <u>Brown Transport Truckload Inc.,</u>

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

v. Beatrice/Hunt-Wesson Inc., 142 B.R. 536, 543 (Bankr. N.D. Ga. 1992). The court in Brown further adopted the Fifth Circuit Court of Appeals' reasoning in Southern Pacific determining the interest rate by adopting the rate from the 90-day Treasury Bill in effect on the date the first payment became due. Id.

Under facts similar to the instant facts, the court in Homburger applied Fourth Circuit precedent to award prejudgment interest to the carrier. The court noted that, in actions brought to recover shipping charges subject to the Interstate Commerce Act, "[t]o allow the [carrier] to recovery without awarding prejudgment interest would be to diminish the tariff charge" in contravention of federal law.[4] Homburger, 932 F. Supp. at 143, citing Coliseum Cartage Co. v. Rubbermaid Statesville, Inc., 975 F.2d 1022, 1026 (4th Cir. 1992). The court in Henry followed Homburger, awarding both pre- and post-judgment interest to be calculated at the applicable 90-day T-Bill rate. Henry, 40 F. Supp. 2d at 1105. A similar issue was addressed by the district court for Connecticut, in which the magistrate judge recommended that prejudgment interest

---

[4] 49 U.S.C. § 13702(a) provides that a motor carrier "may not charge or receive a different compensation for the transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device."

8

be awarded because it is mandatory. The distict judge adopted the recommendation, noting that: "Even assuming that the award of prejudgment interest is discretionary, rather than a mandatory element of damages, such an award would be appropriate in the instant matter to 'make whole' the plaintiff." <u>Delta Traffic Serv. Inc. v. Georgia Pacific Corp.</u>, 1989 WL 122401 at *4 (D. Conn. 1989). On the other hand, the court in <u>Zaks</u> denied the request for prejudgment interest without discussion. 861 F. Supp. at 63.

    The court agrees that prejudgment interest should be awarded in this case. The weight of the authority suggests that the award of prejudgment interest is mandatory because the payment of the freight bill at issue here is governed by the Interstate Commerce Act. To deny the request would provide an incentive for delay, and would result in a policy that allows those who delay payment of their freight bills to gain an advantage over those who pay promptly. See <u>Coliseum Cartage</u>, 975 F.2d at 1026. Such a result clearly circumvents the ICC's policy in requiring all shippers to pay the same tariffs as required under the Interstate Commerce Act. In any event, even if the award of prejudgment interest is not mandatory, the court has discretion to grant such a request, and doing so effectuates the purpose of Congress in regulating carriers

and helps to make the plaintiff whole. Accordingly, the request for prejudgment interest is due to be granted.

## CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion summary judgment, this court determines that plaintiff's motion for summary judgment (court document #24) against defendants is due to be granted and the plaintiff, Mayflower, shall be awarded a judgment against the defendants, Weldon Watson and Nancy Watson, in the amount of $25,061.01, plus prejudgment interest in the amount of $2,636.45[5] for a total judgment of $27,697.46, plus postjudgment interest and the costs of this action.

A separate order will be entered herewith granting judgment in favor of the plaintiff.

Dated the 3rd day of December, 2001.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

[5] This amount represents an interest charge of $3.35 per day for 787 days (the period of time from delivery on October 7, 1999, until the date this order is entered).